CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 2 0 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JENNY C. LAWRENCE,<br>Administratrix of the Estate<br>of Kenneth C. Lawrence<br>    Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Civil Action No. 7:05cv00625<br><br><br>By:  Hon. Michael F. Urbanski<br>      United States Magistrate Judge |

## MEMORANDUM OPINION

Plaintiff Jenny C. Lawrence, Administratrix of the Estate of Kenneth C. Lawrence, deceased, ("Lawrence") brought this action for review of the Commissioner of Social Security's decision denying Lawrence's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433. The parties have consented to the undersigned's jurisdiction, and the case is before the court on cross motions for summary judgment. Having reviewed the record, and after briefing and oral argument, the case is now ripe for decision.

The court finds that the decision of the Commissioner is amply supported by substantial evidence. After the period at issue in this case, Lawrence's condition deteriorated, and he was diagnosed with liver cancer that ultimately claimed his life. Lawrence's subsequent deterioration, however, does not mean that the Commissioner's decision was unsupported or erroneous when rendered. There are no opinions from any treating physicians indicating that Lawrence was disabled as of the date of the Commissioner's decision, and one of Lawrence's treating liver specialists indicated that his impairments did not begin until several months after

the Commissioner's decision. While records submitted to the Appeals Council document the subsequent decline in Lawrence's health, they do not support the conclusion that the Commissioner's decision was wrong when made. Thus, there is no basis for reversal or remand.

I.

Plaintiff was born in May, 1959, had a twelfth grade education, and past relevant work as a motel clerk, construction worker, and production worker at the Radford Army Arsenal. (Administrative Record, hereinafter "R." at 27, 41, 77, 95) Plaintiff's DIB application claimed onset of disability as of November 25, 2001 stemming from cirrhosis of the liver, associated pain and swelling, hepatitis C virus, weakness, and depression. (R. 23, 44) After an administrative hearing, the administrative law judge ("ALJ") rendered a decision on November 28, 2003 finding that while Lawrence had severe impairments, he was not disabled because he retained the capacity to perform light work, including his former employment as a production worker. (R. 19)

After the ALJ's decision, Lawrence continued treatment, and additional medical records were submitted to the Appeals Council. Additionally, Lawrence filed a new application for DIB, which was subsequently approved effective November 29, 2003.[1] The Appeals Council denied Lawrence's request for review of the denial of disability benefits between November 25, 2001 and November 29, 2003, on September 22, 2005. In its denial, the Appeals Council noted that although Lawrence subsequently had been found to be under a disability, this did not warrant a change in the ALJ's decision in the earlier case. The Notice of Appeals Council Action

---

[1] Thus, this case concerns only a closed period of DIB benefits between the alleged onset date, November 25, 2001, and the day after the ALJ's decision in this case, November 29, 2003.

2

indicated that it considered the additional medical evidence, but found that "this evidence, in part, relates to a period after the Administrative Law Judge's decision and the period the claimant was determined to be under a disability or duplicative of evidence already of record." (R. 6) The ALJ's decision became final for purposes of judicial review under 42 U.S.C. § 405(g) at that time. Plaintiff then filed this action challenging the Commissioner's decision denying his claim for benefits.

## II.

Lawrence argues that the ALJ erred in underestimating the debilitating nature of his liver disorders as demonstrated by his subsequent decline, and this fact was borne out by the award of benefits by the Commissioner effective as of November 29, 2003, the day after the ALJ's decision in this case. Lawrence also argues that the medical records submitted to the Appeals Council reveal that his health condition was much worse than found by the ALJ, especially as regards the ALJ's conclusion that Lawrence's cirrhosis of the liver was amenable to treatment. As such, Lawrence seeks a remand for consideration of these records by the Commissioner.

The Commissioner counters that the medical evidence of record at the date of the administrative hearing does not support a finding of disability, and as the medical records submitted to the Appeals Council concern a later period, for which Lawrence has been awarded benefits, they provide no basis to question the ALJ's decision.

Judicial review of disability cases is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is such relevant evidence which, when

3

considering the record as a whole, might be deemed adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971). In making this substantial evidence determination, the court must consider whether the ALJ analyzed all of the relevant evidence and sufficiently explained his findings and his rationale for crediting or discrediting certain evidence. See Sterling v. Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997).

Therefore, the questions presented are (1) whether there is substantial evidence to support the ALJ's assessment of Lawrence's cirrhosis and hepatitis C virus disease conditions and his resultant physical limitations at the time of the ALJ's decision, and (2) whether new evidence submitted to the Appeals Council relating to Lawrence's subsequent medical history contradicts, conflicts, or calls into doubt the ALJ's decision. The existing medical record at the time of the ALJ's decision amply supports his conclusions. Further, while the new evidence reveals that Lawrence was diagnosed with liver cancer after the ALJ's decision, these records also reflect that one of his treating liver specialists opined that the physical impairments from Lawrence's condition began March 1, 2004, more than three years after the alleged onset date and after the closed period in which Lawrence now seeks benefits. As such, the court finds this evidence is plainly sufficient to meet the substantial evidence standard.

### III.

There is no question that Lawrence had severe impairments caused by his cirrhosis of the liver and hepatitis C virus, as the ALJ concluded. (R. 17) The question in this case is whether there is substantial evidence to support the ALJ's conclusion that despite these impairments, Lawrence could return to his past relevant work as a production worker.

4

Several years prior to seeking DIB benefits, Lawrence was diagnosed with liver disease, but had demonstrated some reluctance to change his lifestyle or seek treatment. (R. 125-26, 146) In early February, 2002, Lawrence sought emergency medical treatment for leg swelling at the hospital in Radford, Virginia. (R. 133) A physical exam revealed chronic edema of both of his legs as well as some ascites, a condition of excess fluid in the peritoneal cavity. (R. 133) Lawrence was referred to Dr. Mitchell L. Shiffman, Chief of the Hepatology Section at the MCV Hospital in Richmond and Medical Director of its Liver Transplant Program. Dr. Shiffman examined Lawrence and found he exhibited spider angiomata, an enlarged spleen, and lower swelling. (R. 146) Dr. Shiffman indicated that Lawrence was not a candidate for transplant "unless he could cure his drug habit and remain drug and alcohol free for at least six months, and preferably longer." (R. 146) Further, he noted that "[a]t the present time his [Lawrence's] liver function is relatively stable and as such it might not be unreasonable to try and treat him with interferon therapy. . . ." (R. 146) Lawrence began treatment at MCV, but a consultation assessment letter written by Dr. R. Todd Stravitz on August 9, 2002, painted a discouraging picture of his condition. Dr. Stravitz noted that Lawrence continued to abuse controlled substances, including cocaine, and that "it is most likely too late in [his] disease to treat him safely for his hepatitis C. Our only option is to continue treating the complications of cirrhosis. He is not a liver transplant candidate now, and never will be, if he does not stop abusing illicit substances and alcohol." (R.141) Dr. Stravitz concluded his letter as follows: "If Mr. Lawrence continues to abuse cocaine, I am afraid we have very little to offer him. . . . We will see him back in three months and send him for a right upper quadrant ultrasound to screen for hepatocellular carcinoma." (R. 141)

5

Subsequently, Lawrence had several liver ultrasound imaging tests. An ultrasound taken on September 12, 2002 indicated that "there is no definitive evidence of a focal liver lesion. However, a lesion cannot be excluded entirely given the background of cirrhosis." (R. 139) The medical records refer to another ultrasound taken on February 21, 2003, but a report of that test does not appear in the administrative record. A subsequent progress note indicates that the February 21, 2003 ultrasound revealed hepatomegaly (enlargement of the liver) and hepatic parenchymal disease consistent with Lawrence's history of cirrhosis and hepatitis C. (R. 423) In January, 2004, Lawrence enrolled in an experimental drug study at MCV concerning the treatment of chronic hepatitis C patients with interferon-alfa 2b and ribavirin and began to receive weekly treatment. (R. 423) During the course of this study, a third liver ultrasound was taken on March 16, 2004, which revealed liver lesions not noted on the February 21, 2003 ultrasound. (R. 405) Lawrence continued his treatment at MCV over the course of the next year, but died on June 10, 2005. Ex. 1, Pl.'s Mem. Supp. Summ. J. The death certificate lists liver cancer as the immediate cause of death and chronic hepatitis C as an underlying cause. Id.

There are no opinions from any treating physicians indicating Lawrence was disabled from working during the time period relevant to this application. Such opinions come later. For example, in a letter dated March 23, 2004, Dr. Shiffman of MCV discussed Lawrence's experimental treatment for hepatitis C virus. (R. 564) Shiffman wrote at that time that Lawrence "has significant side effects from hepatitis C and cirrhosis, he suffers from chronic fatigue, myalgias and anthralgias. As a result, he does not feel like he can continue to be employed on any significant basis and I tend to agree with him." (R. 564) Later, on June 21, 2004, Dr. Shiffman wrote that Lawrence had cirrhosis and experienced many of the common

6

side effects of this disease, including: severe fatigue, inability to concentrate, short term memory loss, and post-prandial hypoglycemia. (R. 563) Dr. Stravitz, one of Dr. Shiffman's colleagues in the Hepatology Section of the Gastroenterology Department at MCV, who previously had treated Lawrence, completed a checklist medical opinion regarding Lawrence's ability to do work-related activities on July 1, 1004. (R. 555-60) This opinion contained significant work restrictions premised upon diagnoses of cirrhosis, hepatitis C, and liver cancer, but noted that the restrictions did not exist as of November 1, 2001. (R. 560) Rather, Dr. Stravitz stated that "the first date the patient's condition existed and persisted with such restrictions" was March 1, 2004. (R. 560)

The only other medical opinions regarding disability in the file are from the state agency consulting physician and a consulting medical expert at the administrative hearing. Based on his review of Lawrence's medical records, Dr. Richard M. Surrusco, the state agency consulting physician, opined on March 25, 2003 that Lawrence was limited to lifting or carrying 20 pounds occasionally, 10 pounds frequently, and standing or sitting 6 hours with unlimited ability to push and/or pull. (R. 190-97) This evaluation is generally consistent with physical exertion requirements of light work. See 20 C.F.R. § 404.1567. At the administrative hearing, a medical expert, Dr. H.C. Alexander, testified that Lawrence's principal problem was chronic, active hepatitis secondary to hepatitis C virus, which was established by liver biopsy. (R. 37) And, although Lawrence had abnormal liver function, he did not meet the listing requirements for chronic liver disease as his serum bilirubin values were not at at the level required for Listing 5.05 nor was his ascites sufficiently persistent or recurring to meet the listing. (R. 37-38) Dr. Alexander testified that "although he has had abnormal liver function tests, they've not been at a

7

level of severity to meet the listings. And liver disease per se irrelevantly asymptomatic with minimal limitation of physical function unless its very clinically and it's manifested by all the things that are not found in this situation." (R. 38) Dr. Alexander concluded that Lawrence could lift 50 pounds occasionally, 25 pounds frequently, in the light to medium work categories, and had no limitations as far as standing or sitting, as well as no environmental, postural, or manipulative limitations. (R. 39)

### IV.

The medical evidence in this case plainly establishes that Lawrence's condition declined sometime after November 28, 2003 and, therefore, after the disability period claimed here. The deterioration in Lawrence's condition is not a sufficient basis to reverse or remand this case. In order to remand this case to the Commissioner to consider the new evidence, it must be "relevant to the determination of disability at the time the application was first filed and not merely cumulative." Mitchell v. Schweiker, 699 F.2d 185, 188 (4th Cir. 1983). Evidence is not relevant if it merely establishes the deterioration of a previously non-disabling condition. Szuback v. Sec'y of Health and Human Serv., 745 F. 2d 831, 833 (3rd Cir. 1984); see also Hunt v. Barnhart, 159 Fed. Appx. 569, 575 (5th Cir. 2005). All of the new medical records concern a time subsequent to the relevant closed period in this case, and Dr. Stravitz's opinion is flatly inconsistent with any finding of disability during that period. Accordingly, as this evidence concerns the period after the ALJ's decision related to the subsequent deterioration of Lawrence's liver condition and for which Lawrence was awarded benefits on his subsequent application, this evidence is not relevant to the decision at issue in this case, and a remand is not warranted.

8

## IV.

Lawrence argues that the decline in his health establishes that the ALJ erred when he noted that Lawrence's complications due to cirrhosis were "amenable" to treatment. (R. 17) However, that observation was an accurate reflection of Dr. Stravitz's August 9, 2002 letter in which he concluded that "I think that it is too late in Kenneth's disease to treat him safely for his hepatitis C. Our only option is to continue to treating the complications of cirrhosis." (R. 141) There is nothing in this conclusion that is inconsistent either with Lawrence's subsequent medical history or his later disability opinion. In short, the fact that Lawrence could be treated for complications of cirrhosis is not inconsistent with his later diagnosis of liver cancer and ultimate decline in health.

Lawrence also argues that reliance on Dr. Stravitz's opinion that Lawrence's functional limitations did not exist until March 1, 2004 is undermined by the Commissioner's later determination on a subsequent application that Lawrence was disabled as of November 29, 2003. There is nothing in the administrative record in this case explaining why the Commissioner, on the subsequent application, determined Lawrence to be disabled as of that date, and it would not be appropriate to speculate as to the basis for the Commissioner's subsequent decision. However, as the record reflects substantial evidence to support the ALJ's decision, given the standard of review in these cases, summary judgment will be entered for the Commissioner.

## V.

For the reasons stated above, the court affirms the final decision of the Commissioner and grants the defendant's motion for summary judgment.

9

The Clerk of the Court is hereby directed to send a certified copy of the Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 20th day of September, 2006.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge